## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

KENNA BUNDY, as Personal
Representative of the Estate of Kaylea
Turley, Deceased,

     Plaintiff,

v.

SHERIFF OF GARVIN COUNTY, in
his official capacity, ET AL.,

     Defendants.

Case No. 25-cv-850-SLP

## DEFENDANT TURN KEY HEALTH CLINICS, LLC'S
## MOTION TO DISMISS AND BRIEF IN SUPPORT

## **TABLE OF CONTENTS**

TABLE OF CONTENTS............................................................................... ii

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT OF THE CASE.....................................................................6

ARGUMENTS AND AUTHORITIES....................................................10

I.    PLAINTIFF'S COMPLAINT MUST BE DISMISSED BECAUSE
      PLAINTIFF FAILED TO STATE A CLAIM AGAINST
      TURN KEY UPON WHICH RELIEF MAY BE GRANTED....................10

      A. PLAINTIFF HAS FAILED TO ALLEGE FACTS
         SUFFICIENT TO DEMONSTRATE AN
         UNDERLYING CONSTITUTIONAL VIOLATION ...........................11

      B. PLAINTIFF HAS FAILED TO ALLEGE FACTS
         SUFFICIENT TO STATE A CONSTITUTIONAL
         CLAIM AGAINST DEFENDANT TURN
         KEY BASED ON A MUNICIPAL LIABILITY THEORY..................14


CONCLUSION ......................................................................................25

# TABLE OF AUTHORITIES

<u>CASES</u>

*Arnold v. City of Olathe, Kansas*, 35 F.4th 778, 795 (10th Cir. 2022) ..................20

*Baker v. Wilkinson*, CIV-13-140-JHP-SPS,
2014 WL 298140 at, * 5 (E.D. Okla. Jan. 28, 2014) ...............................................18

*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403-04,
117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) ......................................................... 20

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555,
127 S. Ct. 1955, 1965 (2007) ...........................................................................10, 11

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 394, 109 S. Ct. 1197,
103 L. Ed. 2d 412 (1989) ................................................................................ 20, 22

*City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) ...................................20

*Collins v. Al-Shami*, 851 F.3d 727, 731 (7th Cir. 2017) .........................................11

*Connick v. Thompson*, 563 U.S. 51, 61 (2011) ...................................................22, 23

*Crocker v. Glanz* , 752 F. App'x 564, 569 (10th Cir. 2018 ....................................12

*Crowson v. Wash. Cty. State of Utah*,
983 F. 3d 1166, 1191-92 (10th Cir. 2020) .............................................................. 15, 16

*Dodd v. Richardson*, 614 F.3d 1185, 1208 (10th Cir. 2010)...............................16, 17

*Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008)...................................14

*Ernst v. Creek County Public Facilities Authority*,
697 Fed. Appx. 931, 934 (10th Cir. 2017)..........................................................13, 18

*Estate of Burgaz v. Bd. of Cty. Comm'rs for Jefferson Cty., Colorado*,
30 F.4th 1181, 1189 (10th Cir. 2022) .....................................................................16

*Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.
Ct. 285, 291, 50 L. Ed. 2d 251 (1976) .........................................................11, 12, 14

*Farmer v. Brennan*, 511 U.S. 825, 838, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 811 (1994) ...................................................................12, 16

*Gaston v. Ploeger*, 297 Fed. Appx. 738, 742 (10th Cir. 2008)..............................12

*Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997) .....................................12

*Gregg v. Georgia*, 428 U.S. 153, 173 (1976) ........................................................11

*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991) ..........................................20

*Heidtke v. Corr. Corp. of Am.*, 489 F. App'x. 275, 279-280 (10th Cir. 2012).......................................................................................................12

*Johnson v. Cannon*, 2009 WL 1916928, 2 (E.D. Okla. 2009) .................................. 15

*Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127 (10th Cir. 2023) .............................................................18,19, 20, 21

*Martin v. Malhoyt*, 830 F.2d 237, 255 (D.C. Cir. 1987).........................................21

*Minix v. Canarecci*, 597 F.3d 824, 832-33 (7th Cir. 2023) ...................................18

*Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 691 (1978) ............................................... 16, 17, 20, 21, 23, 24

*Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1317 (10th Cir. 1998) ...................................................................22

*Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993) ........................................................14

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) ............................................ 16

*Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999).................12

*Redding v. Marsh*, 750 F.Supp. 473, 479 (E.D.Okla.1990)....................................14

*Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, (10th Cir. 2013) .............................................................................15, 16

*Scott v. Vance*, 422CV00985KBGJJV, 23 WL 198652, at * (E.D. Ark. Jan. 17, 2023) ...............................................................................18

iv

*Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006) ...............................................12

*Sherman v. Klenke* persuasive. 653 F. App'x 580, 593
(10th Cir. 2016) (unpublished) ................................................................................19

*Smart v. Villar*, 547 F.2d 112 (10th Cir. 1976)..................................................13, 14

*Szabla v. City of Brooklyn Park, Minnesota*,
486 F.3d 385, 390 (8th Cir. 2007) ...........................................................................20

*Tennant v. Miller*, 589 F. App'x 884, 885-86 (10th Cir. 2014) .............................12

*Waller v. City & County of Denver*,
932 F.3d 1277, 1283 (10th Cir. 2019) .................................................16, 21, 22, 23

*Whitesel v. Sengenberger*, 222 F.3d 861, 870 (10th Cir. 2000) ............................. 15

*Washington v. Harper,* 494 U.S. 210, 241, 110 S. Ct. 1028, 1047 (1990)...............8

*White v. Napoleon*, 897 F.2d 103, 113 (3d Cir. 1990)..............................................8

*Williams v. Denver*, 153 F.3d 730 (10th Cir. 1998).................................................22

RULES

Federal Rule of Civil Procedure 12(b)(6) ......................................................6, 11, 24

STATUTUES

42 U.S.C. § 1983 ................................................................11, 12, 14, 15, 16, 17, 24

Defendant Turn Key Health Clinics, LLC (hereinafter "Defendant" or "Turn Key"), herein moves this Court to dismiss this action against it pursuant to Federal Rule of Civil Procedure 12(b)(6). In support, the Defendant respectfully submits the following brief.

## STATEMENT OF THE CASE

1.     On July 31, 2025, Plaintiff Kenna Bundy, as Personal Representative of the Estate of Kayla Turley, deceased, filed her Complaint against multiple Defendants, including Turn Key. *See* Doc. 1.

2.     The only individual defendant who is alleged to be an employee or agent of Turn Key is Defendant Noel.  *Id.* at ¶¶3,11-19.

3.     Plaintiff's claims include allegations of violation of the eighth and/or fourteenth amendment, including failure to provide adequate medical care.  *Id.* at ¶¶353-370.

4.     Plaintiff alleges that Ms. Turley had serious and emergent medical issues which were known to Turn Key and/or its employees/agents.  Plaintiff claims that Turn Key employees/agents acted with deliberate indifference to her serious medical needs, health, and safety and failed to provide Ms. Turley with timely or adequate medical treatment; failed to properly monitor and supervise Ms. Turley's condition; or failed to provide reasonable access to outside medical providers who were qualified and capable of evaluating and treating her while she was placed under their care.  *Id.* at ¶¶353-357.

5.      According to Plaintiffs' allegations, Ms. Turley was booked into the Garvin County Jail ("GCJ") on or about late July and early August 2023, as a pre-trial detainee. *Id.* at ¶¶ 1,23.

6.      Plaintiff alleges Ms. Turley was transported to Chickasaw Medical Center on August 4, 2023 complaining of abdominal pain and other symptoms. Ms. Turley was examined by hospital personnel who could not diagnose her with any medical condition. Plaintiff claims Ms. Turley was discharged back to the custody of GCJ with a prescription for empirical antibiotics. *Id.* at ¶¶ 23-27.

7.      Plaintiff alleges that Ms. Turley was discharged back into the custody of GCJ after 8:00 p.m. walking on her own without assistance that night. *Id.* at ¶ ¶ 29-30.

8.      Plaintiff alleges that Turn Key by and through LPN Noel acted with deliberate indifference because they were aware that Ms. Turley's health declined and they failed to return her to the emergency department, call an ambulance, or have her seen by more qualified medical personnel. *Id.* at ¶3.

9.      Plaintiff further alleges that at 4:24 a.m. DO Kelley served a morning meal to the inmates at which time Ms. Turley did not get up for her breakfast. *Id.* at ¶ 31.

10.      Plaintiff claims that at 9:35 a.m. Ms. Turley asked for help but did not know what she needed help with. Her cellmates reported that she had been drinking water and eating a little bit with the inmates' encouragement. *Id.* at ¶ 33.

11.    Plaintiff alleges that at 7:17 a.m. on August 5 DO Ingram offers Ms. Turley her medication which Ms. Turley does not get up to get. [1]  *Id.* at ¶¶ 50-52

12.    Plaintiff next alleges that LPN Noel notes that Plaintiff refused to get up and take her meds this morning.  Plaintiff does not allege that LPN Noel *knew* that Plaintiff could not stand up.  Nor does Plaintiff allege that LPN Noel was involved in interaction between DO Ingram, who is not a Turn Key employee, and Ms. Turley.  *Id.* at ¶53.

13.    Despite already stating that Chickasaw Medical Center medical staff was unable to diagnose Ms. Turley with any condition, Plaintiff next speculates that by Ms. Turley failing to take her prescribed antibiotic, an untreated infection continued to spread throughout her body.  *Id.* at ¶¶ 23-27,53.

14.    Plaintiff alleges that DO Baxter and LPN Noel begin moving Ms. Turley to another cell at 7:45 a.m. on August 5, 2023.  *Id.* at ¶57.

15.    Plaintiff contends that DO Baxter and LPN Noel yell at Ms. Turley to get up herself because there is nothing wrong with her.  *Id.* at ¶¶57-58.

16.    Plaintiff next speculates that there was no basis for DO Baxter's and LPN Noel's assumption that she was able to walk and that there was nothing wrong with Ms. Turley.  This is despite already alleging and acknowledging that Ms. Turley was

---

[1] Convicted prisoners . . . retain a limited right to refuse treatment and a related right to be informed of the proposed treatment and viable alternatives. *White v. Napoleon*, 897 F.2d 103, 113 (3d Cir. 1990).  A competent individual's right to refuse medication is a fundamental liberty interest. *Washington v. Harper,* 494 U.S. 210, 241, 110 S. Ct. 1028, 1047 (1990).

discharged from the hospital with no medical diagnosis, that she was seen ambulating without issue after her hospital visit, and Ms. Turley stating that she did not know what help she needed.  *Id*. at ¶¶23-27, 29-30,57-58.

17.    Plaintiff alleges that Ms. Turley defecates herself twice and is cleaned up and given a diaper.  Plaintiff next alleges that Ms. Turley is brought to the door of the cell so that LPN Noel can assess Ms. Turley's condition.  *Id*. at ¶62-66.

18.    Plaintiff claims that Plaintiff falls and another inmate reports that she hit her head.  *Id*. at ¶66.

19.    Plaintiff then asserts that LPN Noel does absolutely nothing to check on this but in the exact same sentence acknowledges that LPN Noel reviews the video and determines Plaintiff did not strike her head.  *Id*. at ¶67.

20.    Plaintiff alleges that LPN Noel refused to sign off on sending Ms. Turley to the hospital alleging that LPN Noel stated that "there is no reason to send [Ms. Turley] all her vitals and everything came back good from the hospital"; and that "[Ms. Turley] keeps coming back with everything fine and told us she was good to go."  *Id*. at ¶¶71-72.

21.    Plaintiff alleges that at 9:27 a.m. Ms. Turley is brought to LPN Noel who conducts yet another assessment.  Plaintiff contends that LPN Noel was deliberately indifferent by conducting this assessment because she failed to note Ms. Turley's incontinence and subjective complaints of pain on a "post hospitalization off-site consultation form"; however, in the next breath Plaintiff admits that LPN Noel's

progress notes indicate that she was notating these issues in the system and was clearly monitoring the situation. *Id*. at ¶¶74-80.

22.    Plaintiff alleges that at 4:22 p.m. LPN Noel and DO Baxter go to Ms. Turley's cell and ask her if she wants her medication and according to DO Baxter's report Ms. Turley acknowledged that fact. This is the last interaction between LPN and Ms. Turley as alleged by Plaintiff. *Id*. at ¶¶107-108.

23.    Plaintiff contends that LPN Noel stated in her progress notes that Ms. Turley refused to get up and get meds at that time. *Id*. at ¶108.

24.    Plaintiff does not allege that LPN Noel, or any other Turn Key Staff were involved further in Ms. Turley's care. *Id*. at ¶108.

25.    The Plaintiff claims that at 12:23 a.m. on August 7, 2023 Officer Cory Rouse checked on Ms. Turley and finds her unresponsive. *Id.* at ¶129.

26.    According to Plaintiff, EMS is called to assist Ms. Turley who is then taken to Norman Regional Healthplex. *Id.* at ¶133, 136.

27.    Plaintiff alleges that Ms. Turley ultimately died from multisystem organ failure on August 9, 2023. *Id*. at ¶139.

## <u>ARGUMENTS AND AUTHORITIES</u>

## I.    **PLAINTIFFS' COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965

(2007).   In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted.   The factual allegations within the Complaint "must be enough to raise a right to relief above the speculative level."   *Id*.   (citations omitted).

### A. Plaintiff Has Failed to Allege Facts Sufficient to Demonstrate an Underlying Constitutional Violation.

Plaintiff asserts claims specifically against Defendant Turn Key arising under 42 U.S.C. § 1983 (hereinafter "§ 1983") for violation of Kayla Turley's constitutional right to receive adequate health care in violation of the Eighth and Fourteenth Amendments of the United States Constitution. *See* Doc. 1, ¶¶ 353-370. Individuals detained by the government are guaranteed certain, minimal protections by the U.S. Constitution. Those protections vary, however, depending on the nature of their detention. Pretrial detainees, for instance, are guaranteed adequate medical care under the Fourteenth Amendment's Due Process Clause. *Collins v. Al-Shami*, 851 F.3d 727, 731 (7th Cir. 2017). If convicted, however, prisoners are ensured adequate medical care by the Eighth Amendment's prohibition against the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).

"[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Estelle*, 429 U.S. at 105-06. Therefore, it is well established that negligence alone does not state a claim under § 1983 for

11

deliberate indifference to medical needs and, according to the Tenth Circuit, "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006)(quoting *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999)); *see also Estelle*, 429 U.S. at 105-06; *Farmer*, 511 U.S. at 826; *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997). Thus, in order to prevail on a § 1983 claim, a plaintiff "must show deliberate indifference to a substantial risk of serious harm." *Estelle*, 429 U.S. at 105-06 (1976); *Farmer*, 511 U.S. at 847.

Deliberate indifference requires analysis of two components (1) the objective component, which requires a showing that the deprivation was sufficiently serious and (2) the subjective component, which is akin to "recklessness" as used in criminal law, and requires a showing of the conscious disregard of the substantial risk of serious harm. *Crocker v. Glanz*, 752 F. App'x 564, 569 (10th Cir. 2018); *Tennant v. Miller*, 589 F. App'x 884, 885-86 (10th Cir. 2014) (citing *Farmer*, 511 U.S. at 828); *Self*, 439 F.3d at 1231. Therefore, the plaintiffs must plausibly allege that the defendant "acted with a culpable state of mind," as a defendant cannot be liable for a claim of deliberate indifference unless it is shown the defendant knew of and disregarded an excessive risk to inmate health and safety. *Farmer*, 511 U.S. at 837; *Gaston v. Ploeger*, 229 F. App'x. 702, 710 (10th Cir. 2007); *Heidtke v. Corr. Corp. of Am.*, 489 F. App'x. 275, 279-280 (10th Cir. 2012) (quoting *Self*, 439 F.3d at 1231).

Here, Plaintiff alleges that Ms. Turley died from multisystem organ failure. *Doc 1*, at ¶139.   Death is sufficiently serious to satisfy the objective component. However,

Plaintiffs fail to adequately plead facts sufficient to satisfy the subjective component of their deliberate indifference claim. Plaintiff alleges Ms. Turley had obvious, severe, and emergent medical and mental health needs that were made known to Turn Key that required her to be returned to the emergency department or seen by someone with more medical training. *See* Doc. 1, at ¶3. However, there is no constitutional right to an evaluation by "someone with more training." *See e.g., Ernst v. Creek County Public Facilities Authority*, 697 Fed. Appx. 931, 934 (10th Cir. 2017) (no right to have a licensed physician or psychiatrist who makes suicide watch determinations). Though there is no right to be seen by someone with a higher level of training, Ms. Turley was sent to the emergency department and discharged without a medical diagnosis according to Plaintiff's own pleadings. *Doc* 1, at ¶¶23-27, 29-30,57-58, 71-72. LPN Noel continued to monitor Ms. Turley and subjectively believed that she was able to walk and did not require any medical intervention. *Id.* Clearly, this is not acting with deliberate indifference.

Further, Plaintiff alleges that Turn Key employees/agents acted with deliberate indifference to Ms. Turley's serious medical needs, health, and safety and failed to provide Ms. Turley with timely or adequate medical treatment; proper monitory and supervision; or reasonable access to outside medical providers who were qualified and capable of evaluating and treating her while she was placed under their care. *Id.* at ¶¶353-357. However, in this regard, Courts have specifically held that (1) negligent failure to diagnose a medical condition; (2) failure to provide a test; (3) failure to transfer to or a delay in transfer to an outside facility; or (4) failure to perform a cursory

examination do not rise to the level of a constitutional violation. *Estelle*, 429 U.S. at 105; *Smart v. Villar*, 547 F.2d 112 (10th Cir. 1976); *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008); *Redding v. Marsh*, 750 F.Supp. 473, 479 (E.D.Okla.1990). Further, unsuccessful medical treatments or disagreement(s) between an inmate and a prison health care provider concerning the appropriateness of certain medical care also do not rise to the level of a constitutional violation. *Redding*, 750 F. Supp. at 478; *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993).

Here, Plaintiff does not allege Ms. Turley was completely denied care, rather, Plaintiffs admit Ms. Turley's health was monitored and supervised by a licensed practical nurse, and that she was taken to the emergency department multiple times throughout her incarceration at GCJ. *Doc 1* at ¶¶71-80.  As addressed in greater detail below, the §1983 deliberate indifference analysis contains a causal component without which the claim fails. Moreover, the case law is clear that without an underlying constitutional deprivation, there cannot be an actionable claim against Turn Key pursuant to the *Monell* theory of liability.  Taking Plaintiffs allegations as true, their §1983 claim cannot overcome the instant motion and should be dismissed.

### B.  Plaintiff has Failed to Allege Facts Sufficient to State a Constitutional Claim Against Defendant Turn Key Based on a Municipal Liability Theory.

Assuming Plaintiff has set forth facts sufficient to support a claim of an underlying deprivation of Ms. Turley's constitutional rights, Plaintiff's claim must still fail as there is insufficient evidence to subject Turn Key to liability. Courts have routinely held that there is no vicarious liability for § 1983 claims and the language of

§ 1983 cannot be read to impose vicarious liability based solely on the existence of an employer-employee relationship. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978). "[T]he Supreme Court has long held that municipalities are not liable for the constitutional torts of their employees merely on a *respondeat superior* basis. Instead, municipalities are only liable for constitutional violations that they have directly caused." *Dodd v. Richardson*, 614 F.3d 1185, 1208 (10th Cir. 2010), (quoting *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 691 (1978) (internal citations omitted). There are effectively two manners in which Turn Key, a private company, can be found to have been deliberately indifferent: (1) under the *Monell* theory of liability or (2) the *Crowson* exception. *Id*; *Crowson v. Wash. Cty. State of Utah*, 983 F. 3d 1166, 1191-92 (10th Cir. 2020). Plaintiff has only pled liability under the Monell theory but has failed to plausibly allege sufficient facts establish Turn Key is liable the *Monell* theory.

To state an actionable § 1983 claim against a municipal entity or local government body, "the plaintiff must prove (1) the entity executed a policy or custom (2) that caused the plaintiff to suffer deprivation of constitutional or other federal rights." *Johnson v. Cannon*, 2009 WL 1916928, 2 (E.D. Okla. 2009) (citing *Whitesel v. Sengenberger*, 222 F.3d 861, 870 (10th Cir. 2000)).  A core principle of *Monell* liability is that municipal entities are only liable for their own actions; they are not and cannot be held vicariously liable for the actions of their employees. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).

Specifically, under the municipal theory of liability, it has been held by the Supreme Court that municipalities and other governmental bodies may be liable under

§ 1983 only if they are found to be the official, final policymaker. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)("[m]unicipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered."); *See also Monell*, 436 U.S. at 694; *Dodd v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010). The Tenth Circuit has held, an official policy or custom can be: (1) a formal policy, (2) an informal custom amounting to a persistent, widespread practice that is so permanent and well-settled as to constitute a custom with the force of law, (3) decisions of employees with final policymaking authority, (4) the ratification by such final policymakers of the decisions of subordinates to whom authority was delegated subject to those policymakers' review and approval, or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused. *Crowson*, 983 F.3d at 1184 (citing *Waller v. City & County of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019)).

Accordingly, to prevail against this Defendant under the *Monell* theory, Plaintiffs must establish there was an official Turn Key policy or custom which was the moving force or direct cause of the specific underlying constitutional violation complained of. *Schneider*, 717 F.3d at 770; *Estate of Burgaz v. Bd. of Cty. Comm'rs for Jefferson Cty., Colorado*, 30 F.4th 1181, 1189 (10th Cir. 2022)(citing *Quintana v. Santa Fe. Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020)); *see also Farmer*, 511 U.S. at 828. So, to establish causality, "the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right." *Id*. (internal citations omitted). In other words, in instances such as this, where Turn Key has not properly

16

alleged to have directly caused an injury, but instead that its policies and/or customs caused an employee or agent to do so, plaintiffs must demonstrate a direct causal link between the municipal action and the deprivation of federal rights to establish deliberate indifference under the *Monell* theory of municipal liability. *Id*. In doing so, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee[s]" to ensure municipal liability is not supported by a basis of vicarious liability. *Id*. Said simply, in the matter at hand, to prevail on their § 1983 claim, Plaintiff must plausibly allege that Ms. Turley's death was directly caused by one of the alleged identified official policies or customs of Turn Key or that one of the alleged identified policies or customs of Turn Key was a moving force behind Ms. Turley's death.

Plaintiffs generally allege Turn Key implemented, maintained, and/or adopted a custom, practice, and policy at GCJ regarding medical and mental health care for inmates that which (1) reduced the cost of providing medical and mental health care services in a manner that would maintain or increase its profit margin including no access to a physician or "high level" providers, under prescribing and under-administering medications, and keeping inmates at the jail to avoid off-site medical costs; and (2) inadequate guidance, training, and supervision to medical staff, specifically failure to train to assess and treat obvious or known symptoms of emergent and life-threatening conditions, and serious/complex needs. *See* Doc. 1, ¶¶ 145-165.

Plaintiff alleges there was some perverse cost-consideration that somehow caused Ms. Turley's death. Plaintiff asserts there were not enough physicians or "high

level" providers at GCJ to care for inmates. However, again there is no constitutional right to evaluation by "someone with more training." *See e.g., Ernst v. Creek County Public Facilities Authority*, 697 Fed. Appx. 931, 934 (10th Cir. 2017) (no right to have a licensed physician or psychiatrist whom makes suicide watch determinations); *Minix v. Canarecci*, 597 F.3d 824, 832-33 (7th Cir. 2023); *Scott v. Vance*, 422CV00985KBGJJV, 23 WL 198652, at * (E.D. Ark. Jan. 17, 2023) ("But prisoners are not entitled to the medical care of their choosing, and a mere disagreement with the course of medical care does not rise to the level of constitutional violation."); *Baker v. Wilkinson*, CIV-13-140-JHP-SPS, 2014 WL 298140 at, * 5 (E.D. Okla. Jan. 28, 2014) ("[T]here is no constitutional right to be seen only by a licensed physician.").

Plaintiff also alleges the contract between Garvin County and Turn Key contains provisions that "create a dual financial incentive to under-prescribe and under-administer medications and to keep inmates, even inmates with serious medical needs, at the Jail and to avoid off-site medical costs." *See* Doc. 1, ¶ 152. Plaintiff fails to allege any specific facts to support such a claim. The Tenth Circuit ruled the exact same allegations were insufficient to survive a motion to dismiss municipal liability claims asserted against the Sheriff of Tulsa County. Specifically, in *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127 (10th Cir. 2023), the Tenth Circuit noted:

> **Plaintiff claims that Turn Key and [Sheriff] Regalado enacted policies and customs designed to keep jail costs low and profit margins high**. This had the natural consequence of both keeping inmates, even those with serious medical needs, at the jail **to avoid off-site medical costs and to under-prescribe and under-administer medications**. According to Plaintiff, this custom or policy was evident in the contract between Turn Key and Tulsa County. **The contract**

**allegedly creates such improper financial incentives** because it provides no mandatory minimum health expenditures, and it delineates financial responsibility for pharmaceuticals at the jail to Turn Key and the costs of inmate hospitalizations and offsite care to the county.

*Id.*, at 1145 (emphasis added). Like in *Lucas*, Plaintiff's municipal liability claim fails because:

> **[T]he cost-cutting policy allegations lack specific facts**. We find this court's decision in *Sherman v. Klenke* persuasive. 653 F. App'x 580, 593 (10th Cir. 2016) (unpublished). There, this court found the plaintiff's allegation that a jail's medical contractor had a policy "to reduce overall expenses and maximize bonuses with each fiscal period" conclusory. *Id.* Similarly, there are simply no facts in Plaintiff's complaint from which one can infer a policy or custom of cost-cutting….**the contract does not reveal an improper financial incentive to keep costs low as it simply describes the cost sharing agreement between the county and Turn Key. To the extent it reveals a financial incentive, it is no more troublesome than any institution's general desire to maintain low costs to the extent reasonably possible.** Moreover, the complaint does not explain why the absence of a mandatory minimum expenditure in the contract is particularly problematic here and why it gives rise to an inference of a policy of cost-cutting.

*Id.* (emphasis added).

Additionally, Plaintiffs do not allege that the contract between Turn Key and the County itself is facially unconstitutional. Rather, Plaintiff vaguely implies that it is. Plaintiff states Turn Key is only contractually bound to cover a certain amount of medical care costs but does not allege or cite any cases that would support a finding that such Contract is unconstitutional on its face. *See* Doc. 1, ¶¶ 149-151.

> Where a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a "policy" by demonstrating that the inadequacies were a product of deliberate or conscious choice by policymakers.

*Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 390 (8th Cir. 2007) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989*)); see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) ("[L]imitation must be placed on establishing municipal liability through policies that are not themselves unconstitutional, or the test set out in *Monell* will become a dead letter.").

Plaintiffs have failed to show how the purported inadequacies were the product of the contract. Instead, Plaintiffs' claim premised on the foregoing is purely conjecture. Plaintiffs provide zero factual support, relying wholly on assumptions and conclusory statements. "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Plaintiff does not allege how an alleged "cost-cutting" measure led to Ms. Turley's injuries. Plaintiff does not allege how an alternative provider would have made any difference in the outcome.

With respect to claims of municipal liability, a plaintiff must show a policy or practice was the "moving force" behind the alleged injury. "We must rigorously scrutinize the causation element when the municipal policy is not itself unconstitutional to ensure that the municipality is not held liable solely for its employees' actions." *Arnold v. City of Olathe, Kansas*, 35 F.4th 778, 795 (10th Cir. 2022) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997)). Again, in *Lucas*, *supra*, the Tenth Circuit found a lack of allegations that would plausibly show the requisite causal link:

> **Even if we consider the policy of cost-cutting as sufficiently pled**, the complaint is devoid of any allegations which could lead one to plausibly infer these policies caused Ms. Caddell's injury. Here, **the complaint does not allege that** Dr. Myers or **any medical staff**, including Ms. Hadden, **were motivated by cost in their actions**. Instead, the complaint paints a picture that Dr. Myers acted inexplicably and on his own in the face of Ms. Caddell's concerning and worsening symptoms.

*Lucas*, 58 F.4th at 1145 (emphasis added). Likewise, Plaintiffs have not pled any facts to show, much less even insinuate, any staff member at Turn Key or GCJ was motivated by cost.

Plaintiff has failed to site a single other instance at GCJ in which any of these alleged "policies, practices, or customs" led to adverse outcomes.  Moreover, care provided to inmates at other facilities is peripheral and inconsequential to prove the policies or customs that were present at GCJ in 2023. For one thing, each of these separate facilities have disparate needs, requirements, and inmate populations which require separate contracts and thus cannot be compared to one another.  Moreover, none of these other facilities are parties to the contract with Turn Key and GCJ and therefore are completely irrelevant to the case at bar.  Additionally, Plaintiff has failed to adequately allege these "practices" at GCJ were "so permanent and well settled as to constitute a custom…with the force of law" as required to establish liability under a *Monell* Theory of liability. *Waller*, 932 F.3d 1277.  Simply put, "one instance, however egregious does not a pattern or practice make." *Martin v. Malhoyt*, 830 F.2d 237, 255 (D.C. Cir. 1987).

As it relates to the alleged policy or custom of Turn Key identified by Plaintiff concerning alleged inadequate training, the Tenth Circuit has set forth that a failure-to-

train claim may not be maintained without a showing of a constitutional violation by the allegedly untrained, undertraining, or improperly trained individual. *Williams v. Denver*, 153 F.3d 730 (10th Cir. 1998) *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1317 (10th Cir. 1998) (stating that "failure[-]to[-]train claims . . . require[] a predicate showing that the officers did in fact" violate the decedent's rights). It follows that for Plaintiff to succeed in establishing an official policy or custom regarding inadequate training was in place during that time at issue, Plaintiffs are required to allege, with specificity, which individual was allegedly insufficiently or inadequately trained and establish that specific individual violated Ms. Turley's constitutional rights. Further, to prevail on this claim, Plaintiff must also establish that "the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Waller*, 932 F.3d at 1284, citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997).

Plaintiff suggests that there was a failure to train medical staff in the assessment and care of inmates with complex/serious medical needs. See Doc. 1, ¶ 161. As the Supreme Court has warned, "[a] municipality's culpability for a deprivation of rights is at its ***most tenuous*** where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). (Emphasis added).   A claim based on a failure to train or supervise can only exist "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). The same standard applies whether

assessing municipal liability for claims of failure to train or supervise. *See e.g. Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019).

Plaintiff must show that Turn Key disregarded a known or obvious consequence of failing to train in the relevant respects. To do so, a plaintiff must identify "[a] pattern of similar constitutional violations by untrained employees…' Without alleged notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.'" *Connick*, 563 U.S. at 62. As addressed above, Defendant contends that Plaintiff has failed to properly plead an underlying constitutional violation. Similarly, plaintiff has failed to adequately plead an underlying deprivation as to an individually identified provider. Equally fatal is the lack of factually supported allegations that the alleged deprivation by the specifically identified provider was a result of a failure to train by Turn Key.

While Plaintiff may have alleged the medical decision making of the nurses may have been inadequate, this does not arise to the deliberate indifference standard. Rather, Plaintiff's Complaint outlines LPN Noel provided care and treatment in response to Ms. Turley's clinical presentation, including various assessments and monitoring. Again, while Plaintiff vehemently criticizes and disagrees with these efforts, objectively, these actions as alleged represent the provision of medical care in response to the LPN Noel's independent clinical judgment – even if allegedly incorrect. This is insufficient to establish a claim for municipal liability for deliberate indifference under a *Monell* theory of liability.

Plaintiff does not provide anything other than conclusory allegations that there was a failure to train. Plaintiff devotes paragraphs describing other alleged denials of medical care perpetrated at facilities (other than) GCJ. Again, importantly, Plaintiff has failed to show there was a training deficiency at GCJ. Plaintiff has failed to show the causal link. None of the alleged other instances of failures are similar to Plaintiff's facts. Regardless of how Plaintiff attempts to compare her claims to these past instances, that absence of similarity undercuts her claim. Therefore, since Plaintiff has failed to identify the training shortcoming, and failed to show the causal connection, Plaintiff has equally failed to show that Turn Key knew of and disregarded any insufficiencies that would have led to a denial of care of Ms. Turley.

Plaintiffs has failed to plead facts sufficient to establish that any policy, custom, or practice of Turn Key was the "moving force" behind any alleged constitutional deprivation under the *Monell* Theory of liability. Thus, Plaintiffs has failed to state an actual claim for municipal liability under § 1983 against Turn Key and, pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff's claims against Turn Key must be dismissed.

Plaintiff has failed to plead facts sufficient to establish that any policy, custom, or practice of Turn Key was the "moving force" behind any alleged constitutional deprivation under either the *Monell* Theory of liability. Thus, Plaintiff has failed to state a claim for municipal liability under § 1983 against Turn Key and, pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiffs' claims against Turn Key must be dismissed.

## CONCLUSION

In order to survive the instant Motion to Dismiss, Plaintiff must have properly alleged an underlying constitutional deprivation and must have properly alleged that a specific Turn Key pattern, practice, or custom was the cause of said deprivation. Simply put, there must be a correlation between Turn Key's pattern, practice, or custom and the alleged violation of Ms. Turley's constitutional rights. Plaintiff has not met her pleading burden in this regard and as such, Defendant's Motion to Dismiss should be granted. Dismissal of all of Plaintiffs' claims against Turn Key is appropriate at this time as Plaintiffs have failed to state a claim against Defendant upon which relief can be granted.

WHEREFORE, Defendant Turn Key prays that this Court grant its motion and dismiss this action against this Defendant.

Respectfully submitted,

*s/ Erica R. Mackey*
Sean P. Snider, OBA# 22307
Anthony C. Winter, OBA# 32148
Erica R. Mackey, OBA# 32057
JOHNSON HANAN VOSLER
HAWTHORNE & SNIDER
9801 N. Broadway Extension
Oklahoma City, OK 73114
Telephone: 405.232.6100
Facsimile: 405.232.6105
ssnider@johnsonhanan.com
awinter@johnsonhanan.com
emackey@johnsonhan.com
*Attorneys for Defendants Turn Key*
*Health Clinics, LLC and Lynnsee Noel,*
*LPN*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the   day of _____, 2025, I electronically transmitted the attached document to the Clerk of Court using the ECF System. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

*/s/Erica R. Mackey*
Erica R. Mackey