## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KENNA BUNDY, as Personal Representative of the Estate of Kayla Turley, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 25-cv-00850-SLP |
| SHERIFF OF GARVIN COUNTY, IN HIS OFFICIAL CAPACITY, TURN KEY HEALTH CLINICS, LLC, LYNNSEE NOEL, LPN, JENNIFER BAXTER, MELISSA MELTON, ALESHA INGRAM, PAULA KELLEY, VINCENT MATTHEWS, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT SHERIFF'S MOTION TO DISMISS AND BRIEF IN SUPPORT

Robert S. Lafferrandre, OBA No. 11897
Jessica L. Dark, OBA No. 31236
Jessica James Curtis, OBA No. 35140
PIERCE COUCH HENDRICKSON
  BAYSINGER & GREEN, L.L.P.
1109 North Francis Avenue
Oklahoma City, Oklahoma 73106
Telephone: (405) 235-1611
Facsimile:  (405) 235-2904
rlafferrandre@piercecouch.com
jdark@piercecouch.com
jjamescurtis@piercecouch.com

October 21, 2025

**REPLY TO PLAINTIFF'S RESPONSE TO**
**DEFENDANT SHERIFF'S MOTION TO DISMISS**

Defendant Sheriff of Garvin County, in his official capacity, respectfully submits this Reply in Support of his Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6):

## I.    PLAINTIFF MISCONSTRUES THE PLEADING STANDARD

Plaintiff appears to take the position that the barest recitation of "facts" is sufficient to withstand a motion to dismiss. This is incorrect. "'Aside from conclusory statements, no allegations in the complaint give rise to an inference that the municipality itself established a deliberate policy or custom that caused [Ms. Turley's] injuries. Consequently, the complaint 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1291 (10th Cir. 2019) (quoting *Mocek v. City of Albuquerque*, 813 F.3d 912, 934 (10th Cir. 2015)) (further quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Section 1983 plaintiffs must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements are not sufficient to state a claim for relief." *Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007)) (internal quotations omitted).

Plaintiff's Response on its face appears to provide supporting authority for her claims of sufficiency; however, a distinction can be made between all the cases Plaintiff cites to in her Response and the case before the Court today. Most importantly, the

1

plaintiffs in the cited cases "have ***done more* than simply allege that the individual officers' conduct conformed to official policy or practice; rather, they have identified a *specific* practice to which the officers' conduct allegedly conformed**…." *Taylor v. RED Dev., LLC*, 11-2178-JWL, 2011 WL 3880881, at \*4 (D. Kan. Aug. 31, 2011) (emphasis added); *see also Gooding v. Ketcher*, 838 F. Supp. 2d 1231, 1241 (N.D. Okla. 2012) ("Plaintiff has done more than simply allege that Ketcher's conduct conformed to an official policy or practice."). Plaintiff's own cited authority, *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826 (S.D. Tex. 2011), stated: "*Still*, a plaintiff suing a municipality must provide fair notice to the defendant, and this ***requires more than* genetically** [sic] ***restating the elements of municipal liability***. *Id*. at 843-44 (emphasis added).

Additionally, the only Western District case cited to by Plaintiff, *Callier v. Pottawatomie County Public Safety Center Trust*, also emphasizes that a motion to dismiss "requires more than boilerplate allegations of a municipal policy[.]" *Callier v. Pottawatomie Cnty. Pub. Safety Ctr. Tr*., CIV-23-594-G, 2024 WL 1340595, at \*8 (W.D. Okla. Mar. 5, 2024), *report and recommendation adopted, Callier v. Pottawatomie Cnty. Pub. Safety Ctr. Tr.,* CIV-23-594-G, 2024 WL 1338155 (W.D. Okla. Mar. 28, 2024) (internal citations omitted). As discussed further below, Plaintiff's Complaint offers only conclusory allegations that amount to a mere recitation of the elements of her claims. The Complaint fails to meet the pleading standard and should be dismissed as a matter of law.

## II.    PLAINTIFF DOES NOT ALLEGE AN UNDERLYING CONSTITUTIONAL VIOLATION UPON WHICH GARVIN COUNTY COULD BE LIABLE

To show that a Garvin County Detention Center ("GCDC") employee was deliberately indifferent, Plaintiff must allege that s/he was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed ***and*** that the employee actually drew such an inference. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). Plaintiff then must show that the individual consciously disregarded that substantial risk of harm. *Heidtke v. Corr. Corp. of Am.,* 489 Fed. Appx. 275, 280 (10th Cir. 2012). Plaintiff must also show that GCDC employees' reliance on medical staff was unreasonable. *Hollis v. Davis*, 2014 WL 7184406, at *6 (N.D. Okla. Dec. 16, 2014). Plaintiff's own self-serving, conclusory allegations do not provide factual support to state a claim that a GCDC employee was deliberately indifferent to Ms. Turley's medical needs.

The majority of Plaintiff's Response addresses her issues with the actions of LPN Noel, who was undisputedly not a GCDC employee. (Doc. 1, ¶ 14). Despite Plaintiff's protestations in her Response, the Complaint's allegations do not show that the GCDC employees ***knew*** that they should ignore the jail medical staff and send Ms. Turley out for treatment and failed to do so. Plaintiff takes issue with the Sheriff's assertion that the jail staff reasonably relied on the advice and guidance of Turn Key staff and claims this reliance was unreasonable. This argument is unavailing for two reasons. First, Plaintiff alleges that GCDC staff's reliance on Turn Key was unreasonable because Ms. Turley's condition was "obviously serious." But Plaintiff does not allege how the GCDC staff, as non-medical professional lay people, knew that Ms. Turley's condition was beyond that which Turn

Key's medically trained staff could handle. According to Plaintiff's own allegations, LPN Noel observed Ms. Turley multiple times throughout those two days in 2023, and during those times, LPN Noel noted that Ms. Turley did not need to go back to the hospital.[1] The undisputed facts confirm that LPN Noel monitored Ms. Turley and documented the situation. (Doc. 1, at ¶¶ 74-80). LPN Noel last saw Ms. Turley on the morning of August 6, 2023, and told the jail staff that she did not need to go to the hospital. (Doc. 1, ¶¶ 71, 78). There are no facts that show LPN Noel's care and observations were so inadequate that untrained jail staff should have known not to rely on her medical judgment.

Second, although the obviousness of the condition may play into whether the detention officer reasonably relied on medical professionals, Plaintiff still must show that it would be evident to a layperson that the prisoner was receiving inadequate care. *See, e.g., Weatherford ex rel. Thompson v. Taylor,* 347 F. App'x 400, 403 (10th Cir. 2009) (holding that a jailer's reliance on the medical staff's assurance that an inmate was not having a heart attack was unreasonable because the jailer knew a person with chest pain could be suffering a medical emergency); *Hollis v. Davis,* 2014 WL 7184406, at *6 (N.D. Okla. Dec. 16, 2014) ("the reasonable reliance of jail officials on the medical advice of their contract partners would not necessarily be deliberate indifference"). As discussed in the underlying motion, Plaintiff has not alleged any facts that jail staff knew it was unreasonable to rely on the Turn Key staff or that it would be evident to a layperson that reliance on Turn Key staff would be unreasonable in this situation. In fact, Plaintiff's own

---

[1] All the times that Plaintiff alleges that LPN Noel saw Ms. Turley are outlined in her Motion to Dismiss (Doc. 24, pp. 5-9), which is adopted herein by reference.

allegations show that Turn Key staff were aware of Ms. Turley's condition, and jail staff were aware that Turn Key was monitoring the situation. (Doc. 1, ¶¶ 71-72; 74-78; 107-108). For these reasons, and the reasons discussed in the Sheriff's underlying motion, Plaintiff has failed to allege an underlying constitutional violation by jail staff upon which the County could be liable.

### III. PLAINTIFF HAS FAILED TO IDENTIFY AN UNCONSTITUTIONAL POLICY/CUSTOM BY VIRTUE OF RETAINING TURN KEY

Even if this Court finds that Plaintiff has alleged an underlying constitutional violation, Plaintiff fails to allege the second prong of her municipal liability claim. Plaintiff misstates the arguments made in the underlying Motion regarding municipal liability. In her response, Plaintiff argues, "[T]he County cannot insulate itself from liability by merely contracting with Turn Key. Simply put, Turn Key's medical system is the County's medical system." *See* Doc. 38, pp. 21-22. There is **no** argument set forth in the underlying Motion that the Sheriff seeks to use Turn Key as a shield from liability.

What the Sheriff's Motion *actually* argues is that Plaintiff has failed to demonstrate that the policy of retaining Turn Key was unconstitutional and/or the moving force behind the alleged injury. In her Complaint, Plaintiff alleges, "by simply retaining Turn Key . . . GCSO/the County are deliberately indifferent…." *See* Doc. 1, ¶¶ 294-295. There is no allegation the policy of contracting with Turn Key was facially unconstitutional. "Where the policy is not facially unconstitutional, a plaintiff must show that it was 'adopted with deliberate indifference to the known or obvious fact that such constitutional violations

would result.'" *Sky v. City of Arlington*, 712 Fed. Appx. 396, 399 (5th Cir. 2017) (citing *James v. Harris Cty*., 577 F.3d 612, 617 (5th Cir. 2009)).

Plaintiff, through both her Complaint and Response, fails to point to a single incident that could plausibly demonstrate the Sheriff was on notice that the medical system implemented by Turn Key at the GCDC would lead to a constitutional violation. Plaintiff points to not one single incident that occurred at the GCDC and her Complaint contains only allegations of incidents regarding unrelated medical issues at completely separate facilities. Even without these essential allegations, Plaintiff asserts that the Sheriff was on notice that GCDC/Turn Key Staff were incapable of assessing inmates, "with complex or serious medical and mental health needs, like Ms. Turley." (Doc. 38, pp. 20-25). Yet the Complaint contains no facts showing how the Sheriff could have been, or reasonably should have been, placed on notice of any such deficiency.

Plaintiff continues to rely on allegations of incidents at other facilities involving Turn Key as though they are sufficient to support her claims. She cites to *Crawford v. Turn Key Health Clinics, LLC*, and claims that this case supports her contention that she has alleged that GCSO maintained unconstitutional policies and customs. 24-CV-6-JDR-SH, 2025 WL 1885637, at *8 (N.D. Okla. July 8, 2025). In *Crawford*, a plaintiff brought suit against the Sheriff of Tulsa County and Turn Key based on allegations of unconstitutional policies and customs as related to medical care. The plaintiff alleged that there were "longstanding, systematic deficiencies in the medical and mental health care provided to inmates at the Tulsa County Jail" that had been reported to the sheriff, and the sheriff hired Turn Key in 2016, "despite knowing of these failures." *Id*. In *Crawford*, the plaintiff's

6

claim was supported by specific factual allegations indicating that the sheriff knew or reasonably should have known of deficiencies in medical care, as evidenced by multiple prior incidents at the same facility. *Id.* That is not the case here.

As discussed in depth in the Sheriff's underlying Motion, in this case, Plaintiff does not allege a single incident or evidence of purported failures by Turn Key staff at the GCDC. Plaintiff's attempt to base this claim on incidents at other facilities involving other Turn Key staff falls short of establishing that the Sheriff of Garvin County knew or should have known that retaining Turn Key as a medical provider for the GCDC would likely result in a constitutional violation. The cited incidents are neither factually similar nor accompanied by any findings of unconstitutional conduct. Plaintiff's Complaint fails to show any factual support for her claims that the GCDC has an unconstitutional policy or custom and should, therefore, be dismissed as a matter of law.

## IV.    PLAINTIFF FAILS TO IDENTIFY TRAINING DEFICIENCIES

Plaintiff alleges that GCDC staff members were incapable of caring for inmates with serious and emergent medical conditions "like Ms. Turley." (Doc. 1, ¶ 328; Doc. 38, p. 26). To the extent Plaintiff asserts that GCDC staff were insufficiently trained and/or supervised to care of inmates with serious medical needs, such claims must fail. "**Allegations of generalized deficiencies in training related to all aspects of care for inmates with 'complex and serious medical needs' are too conclusory to support a plausible § 1983 municipal liability claim**." *Lee v. Turn Key Health Clinics*, LLC, 19-CV-00318-GKF-JFJ, 2020 WL 959243, at \*8 (N.D. Okla. Feb. 27, 2020) (citing *Brashear v. Tulsa Cty. Bd. of Cty. Comm'rs*, No. 15-CV-473-GKF-PJC, 2016 WL 633374, at \*3 (N.D. Okla. Feb.17,

7

2016) and *Lopez v. City of Tulsa*, No. 09-CV-757-TCK-FHM, 2010 WL 3825395, at *6 (N.D. Okla. Sept. 27, 2010)) (emphasis added); *Woodson v. Armor Corr. Health Servs., Inc*., 20-CV-00186-RM-KMT, 2021 WL 1300596, at * 12 (D. Colo. Feb. 8, 2021), report and recommendation adopted, *Woodson v. Armor Corr. Health Servs., Inc*., 20-CV-00186-RM-KMT, 2021 WL 1050009 (D. Colo. Mar. 19, 2021) (citing *Lee*); *Carter v. Morris*, 164 F.3d 215, 219 (4th Cir. 1999) ("Carter in essence claims that past generalized bad police behavior led to future generalized bad police behavior, of which her specific deprivations are an example. This nebulous chain fails the 'rigorous standards of culpability and causation' required for municipal liability under section 1983.")

Plaintiff's claims and arguments about failures to train/supervise staff on caring for inmates with "complex and serious medical and mental health needs" is too generalized to pass constitutional muster. "To prevail, plaintiffs must 'identify a specific deficiency' in the training 'closely related to [the] ultimate injury.'" *Lee*, 2020 WL 959243, at *8. Plaintiff has not done so. She simply claims that it is readily apparent that the detention staff had zero training or supervision without demonstrating how any specific training was deficient, facts that show that the Sheriff was on notice of a training deficiency, or even what specific alleged deficiency led to the alleged incident. Plaintiff's failure to train and failure supervise claims against the Sheriff must be dismissed.

## V.   PLAINTIFF'S CLAIMS REGARDING ALLEGED UNDERSTAFFING MUST BE DISMISSED

Plaintiff, in a conclusory fashion, alleges that the Sheriff, through Turn Key, operated an unconstitutionally deficient medical delivery system based on an alleged

shortage of PAs, NPs, and MDs. (*See* Doc. 38, pp. 22-24). Plaintiff characterizes this claim by stating "Turn Key had a policy… of inadequately staffing county jails, including County Jail, with undertrained and underqualified medical personnel." (Doc. 38, citing Doc. 1, Complaint, ¶¶ 327-338). Yet Plaintiff offers no factual allegations showing that such providers were, in fact, absent or otherwise unavailable at GCDC.

Plaintiff further alleges that only a "small number of mid-level providers" were employed but fails to specify how many or how that number was inadequate. She merely concludes that this unspecified number was "plainly insufficient." (Doc. 38, p. 22.) Such vague assertions do not establish a constitutional violation. Plaintiff does not identify how the number of trained PAs, NPs, or MDs impacted the care provided to inmates generally, or to this inmate in particular, who was sent out to be evaluated at a hospital by mid-level providers and was returned to the jail undiagnosed. (Doc. 1, ¶¶ 23–30.) Without factual allegations showing that the alleged shortage of medical personnel caused or contributed to a constitutional deprivation, Plaintiff's claim rests on speculation rather than a plausible theory of liability.

## V. PLAINTIFF IDENTIFIES NO SYSTEMIC FAILURES AT THE GCDC

Plaintiff's Response alleges that the GCDC had a systematic failure of medical policies and procedures. Such an argument fails for the same reasons already discussed: Plaintiff alleges no incidents regarding issues with medical care at the GCDC. Plaintiff has not sufficiently alleged **any** facts to show any prior failures, much less *systemic* failures, that put the Sheriff on notice of any deficient policies with respect to inmates "with complex or serious medical and mental health needs" at GCDC. Plaintiff claims "[t]he

entire Complaint is threaded with allegations of continuing and reckless failure to provide clinical supervision and oversight of the nursing staff, as well as a consistent failure of the Jail's medical staff to properly monitor inmates with serious mental health issues, like Ms. Turley." (*See* Doc. 38, pp. 20). Yet again, Plaintiff alleges no prior incidents suggesting that any staff member at GCDC failed in a manner that would have put the Sheriff on notice of a systemic failure in the facility's medical policies or procedures.

In sum, Plaintiff has not alleged any facts showing an underlying constitutional violation of Ms. Turley's rights nor do the facts demonstrate that the Sheriff knew—or reasonably should have known—that retaining Turn Key or its medical staff would result in a constitutional violation. Further, Plaintiff's Complaint fails to identify any facts suggesting the Sheriff was ever placed on notice of, or consciously disregarded, any deficiency in training, supervision, or medical care at the facility. Absent such factual support, there can be no basis for municipal liability. Although Plaintiff's Complaint is lengthy, numerosity does not equate to sufficiency. The allegations remain conclusory, and lack the factual substance necessary to transform speculation into a plausible claim for relief. Accordingly, Plaintiff's claims against the Sheriff must be dismissed.

## CONCLUSION

WHEREFORE, the Sheriff of Garvin County, Oklahoma, in his official capacity respectfully requests this Court dismiss Plaintiff's claims against him pursuant to Fed. R. Civ. P. 12(b)(6) as Plaintiff has failed to state a claim upon which relief may be granted.

Respectfully submitted,

 s/Jessica James Curtis
Robert S. Lafferrandre, OBA No. 11897
Jessica L. Dark, OBA No. 31236
Jessica James Curtis, OBA No. 35140
PIERCE COUCH HENDRICKSON
  BAYSINGER & GREEN, L.L.P.
1109 North Francis Avenue
Oklahoma City, Oklahoma 73106
Telephone: (405) 235-1611
Facsimile: (405) 235-2904
rlafferrandre@piercecouch.com
jdark@piercecouch.com
jjamescurtis@piercecouch.com
**Attorneys for Defendant Sheriff of Garvin County, in His Official Capacity**

## CERTIFICATE OF SERVICE

I certify that on the 10th day of October, 2025, I electronically transmitted the foregoing document via email to all counsel who have entered an appearance in this action.

s/Jessica James Curtis
Jessica James Curtis