**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| KENNA BUNDY, as Personal Representative of the Estate of Kayla Turley, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>SHERIFF OF GARVIN COUNTY, in his official capacity, et al.,<br><br>Defendants. | ) | Case No. CIV-25-850-SLP |

**ORDER**

Before the Court are the Motions to Dismiss of Defendant Turn Key Health Clinic, LLC (Turn Key) [Doc. No. 23] and Defendant Sheriff of Garvin County, in his official capacity (Sheriff) [Doc. No. 25]. The Matters are fully briefed. *See* Pl.'s Responses [Doc. Nos. 36 and 38] and Turn Key's and the Sheriff's Replies [Doc. Nos. 42 and 43].[1] For the reasons that follow, the Motions are DENIED.

## I. Introduction

In August 2023, Kayla Turley died while detained at the Garvin County Detention Center (GCDC). In this action brought pursuant to 42 U.S.C. § 1983, Plaintiff, Kenna Bundy, as personal representative of the Estate of Kayla Turley (Plaintiff), alleges that Ms.

---

[1] Citations to the parties' briefing submissions reference the Court's ECF pagination.

Turley died as a result of the deliberate indifference to her serious medical needs by persons working at the Garvin County Detention Center (GCDC).[2]

Plaintiff brings her § 1983 claim against Defendant Sheriff in his official capacity and seeks to impose liability against Garvin County based on allegations that Ms. Turley's death resulted from an unconstitutional custom, policy or practice at the GCDC.[3] Defendant Turn Key is a private correctional healthcare company that contracts with counties, including Garvin County, to provide medical professional staffing, supervision and care in county jails. Plaintiff alleges that Turn Key was responsible for providing medical services, supervision and medication to Ms. Turley and was also responsible, in part, for creating, implementing and maintaining policies, practices, and protocols that govern the provision of medical and mental health to inmates at GCDC and for training and supervising its employees. Plaintiff's claims against the Sheriff and Turn Key arise under *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), which "allows plaintiffs to sue local governing bodies (or their functional equivalents) directly under § 1983 for constitutional violations pursuant to a body's policy, practice or custom."

---

[2] These persons are also named as individual Defendants in this action. The individual Defendants were indicted on federal criminal charges for deprivation of Ms. Turley's civil rights based on the same events as those that form the basis of Plaintiff's claims in this action. *See United States v. Jennifer Baxter, et al*., Case No. CR-24-516-R (W.D. Okla.). The individual Defendants have each been convicted, either pursuant to guilty plea or jury verdict, and currently await sentencing. This action was previously stayed pending the criminal convictions. *See* Order [Doc. No. 44].

[3] Plaintiff's claims against the Sheriff in his official capacity are, effectively, claims against Garvin County. *See Harden v. Hedgecock*, 181 F.4th 1094, 1101 (10th Cir. 2026) ("When a plaintiff sues a municipal employee in his official capacity under § 1983, the suit is an action against the county or municipality." (internal quotation marks and citation omitted)).

*Est. of Burgaz v. Bd. of Cnty. Comm'rs for Jefferson Cnty.*, *Colo.*, 30 F. 4th 1181, 1189 (10th Cir. 2022).

Defendant Turn Key moves for dismissal of Plaintiff's claims on two grounds: (1) Plaintiff has failed to allege facts sufficient to demonstrate an underlying constitutional violation by its employee, Defendant Noel, "[t]he only individual defendant who is alleged to be an employee or agent of Turn Key" (*see* Mot. at 6); and (2) Plaintiff has failed to allege facts sufficient to state a constitutional claim based on a municipal liability theory.

In response, Plaintiff contends that the Complaint plausibly alleges deliberate indifference by Defendant Noel who persistently disregarded Ms. Turley's emergent and obvious medical needs. Plaintiff further argues that the Complaint plausibly alleges that Turn Key maintained an "unconstitutional medical delivery system" at GCDC to include inadequately staffing GCDC with undertrained and underqualified medical personnel and failing to provide clinical supervision over nursing staff and detention officers who failed to refer Ms. Turley for needed treatment.

Defendant Sheriff moves for dismissal of Plaintiff's claims against him on the following grounds: (1) Plaintiff fails to allege facts to demonstrate an underlying constitutional violation by any employee of the GCDC; (2) it was constitutional for GCDC to retain Turn Key; (3) Plaintiff has failed to plead facts showing a failure in staffing, training, or any other practice or policy; (4) lack of causation and failure to show deliberate indifference; (5) Defendant Sheriff did not fail to supervise with respect to Turn Key

personnel; and (6) Plaintiff has failed to allege sufficient facts to support the claim that Turn Key's policies are unconstitutional.

In response, Plaintiff contends that the Complaint plausibly alleges an underlying constitutional violation by the individual Defendants. Plaintiff further contends that the Complaint alleges facts sufficient to demonstrate systemic failure of medical policies and procedures at the GCDC and a failure to train/supervise medical and detention staff and that those failures were the moving force behind the violation of Ms. Turley's constitutional rights.

## II. Governing Standard

A party may move to dismiss a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal is proper when the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1207 (10th Cir. 2022) (citation omitted).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the [complaint] alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations omitted). In reviewing the sufficiency of the

complaint, "[a]ll well-pled factual allegations are accepted as true and viewed in the light most favorable to the nonmoving party." *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). However, not all factual allegations are entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). A formulaic recitation of the elements of a claim and other conclusory allegations need not be accepted as true *Id*. at 681 (citing *Twombly*, 550 U.S. at 554-55).

**III. <u>Legal Framework</u>**

"The right to custodial medical care is well settled." *Estate of Beauford v. Mesa Cnty., Colo*., 35 F.4th 1248, 1262 (10th Cir. 2022) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).[4] A prisoner's constitutional rights are violated when prison officials act with deliberate indifference to an inmate's serious medical needs. *Id*. Deliberate indifference entails both an objective component and a subjective component. *Id*.

Defendants challenge only the subjective component in seeking dismissal. *See* Turn Key's Mot. at 12 ("Death is sufficiently serious to satisfy the objective component."); Sheriff's Mot. at 12-15 (addressing only the subjective component). The subjective component requires a plaintiff to establish that "a prison official had a sufficiently culpable state of mind." *Est of Beauford*, 35 F.4th at 1262 (internal quotation marks and citation omitted). The official must have acted with "deliberate indifference," which means "the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official

[4] A pretrial detainee's right to medical care is governed by the Fourteenth Amendment's Due Process Clause, but the same standard is applied as that used to analyze Eighth Amendment claims brought by convicted prisoners. *Id*.

must both [have] be[en] aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and he must [have] also draw[n] the inference." *Id.* at 1263. A substantial risk of serious harm may be shown by "inference from circumstantial evidence" or "the very fact that the risk was obvious." *Id.* (internal quotations and citation omitted).

The parties do not distinguish whether Plaintiff's claim of deliberate indifference is premised on Ms. Turley's death, her intermediate injury, or both.[5] But the Complaint plausibly alleges facts that could support either claim. *See, e.g., White v. Bowling*, No. 25-5084, 2026 WL 2056858 at *5-6 (10th Cir. July 16, 2026) (analyzing claim of deliberate indifference based on both death and intermediate injury as the "substantial harm" supporting the claim).

As set forth, Plaintiff brings *Monell* claims against both Turn Key and the Sheriff.[6] A *Monell* claim is permitted against a local governing body (or its functional equivalent) under § 1983 for constitutional violations resulting from the body's "policy, practice, or

---

[5] As detailed in the Complaint, the alleged delay and denial of medical care persisted over a period of days beginning on August 4, 2023 when Ms. Turley was released from the hospital and returned to the custody of the GCDC. Ms. Turley died on August 9, 2023. Throughout this time period while she remained at the GCDC Ms. Turley was exhibiting signs of a serious and obvious medical problem. But Ms. Turley did not receive medical attention even though on discharge from the hospital, the physician had instructed that she be returned to the emergency department if any new or worsening symptoms developed. *See, e.g.*, Compl. ¶ 25.

[6] Although Turn Key is a private entity, the *Monell* doctrine has been extended to private § 1983 defendants. *White*, 2026 WL 2056858 at *5 (citing *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003)); *see also Myers v. Turn Key Health Clinics, LLC*, No. 24-5113, 2026 WL 73939 at *5 (10th Cir. Jan. 9, 2026) (stating that because Turn Key did not challenge its liability as a private actor under *Monell*, in keeping with Tenth Circuit practice, the court would assume Turn Key could be held liable (citing cases)).

custom." *Myers,* 2026 WL 73939 at *5 (quoting *Est. of Burgaz*, 30 F.4th at 1189). "Policies meeting this standard include among others, decisions of municipal employees with final policymaking authority and the deliberately indifferent failure to adequately train or supervise employees." *Harden*, 181 F.4th at 1101.

Where a *Monell* claim is premised on "either a failure-to-train or failure-to-supervise" then a plaintiff must show an individual officer committed a constitutional violation. *Est. of Burgaz*, 30 F.4th at 1189. If the claim, however, alleges an unconstitutional policy or custom, the plaintiff "need not demonstrate an individual committed a constitutional violation" but can show that "the combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights." *Id*. at 1190 (internal quotation marks and citation omitted). The policy or custom may be unconstitutional "precisely because [it] fail[s] to ensure that any single officer is positioned to prevent the constitutional violation." *Id*. (internal quotation marks and citation omitted). This latter type of *Monell* claim is sometimes referred to as "a systemic theory of *Monell* liability." *Myers*, 2026 WL 73939 at *5 (citations omitted).

Here, Plaintiff premises her *Monell* claims on both allegations of constitutional violations by individuals (as she must for purposes of the failure-to-supervise and failure-to-train claims) and on the conduct of multiple individuals. For both types of claims, Plaintiff must "allege facts showing: (1) an official policy or custom, (2) causation, and (3) deliberate indifference." *Est. of Burgaz*, 30 F.4th at 1189.

## IV. Discussion

### A. Underlying Constitutional Violation

As an initial matter, the Court rejects Defendants' arguments for dismissal premised on pleading deficiencies in alleging an underlying constitutional violation. *See* Turn Key's Mot. at 11-14; Sheriff's Mot. at 11-15. The Court previously denied the Motion to Dismiss filed by Defendant Noel, an LPN employed by Turn Key and working at the GCDC under contract with the County. The Court found plausible allegations of Defendant Noel's deliberate indifference to Ms. Turley's serious medical needs. *See* Order [Doc. No. 45]. The Court adopts the findings set forth in that Order and rejects Defendants' arguments that no underlying constitutional violation has been alleged.

To the extent the Sheriff tries to shield himself from liability by arguing that there are no allegations that a *GCDC* employee, as opposed to a *Turn Key* employee, engaged in any underlying unconstitutional conduct, the Court rejects that argument. *See Burke v. Regalado*, 935 F.3d 960, 996 (10th Cir. 2019) (recognizing that a county sheriff's "official capacity liability may be premised on the constitutional violations of either [detention facility] or [medical care contractor] employees[.]").[7] Thus, the alleged conduct of Defendant Noel is sufficient to establish, for Rule 12(b)(6) purposes, an underlying constitutional violation as to Plaintiff's claims against the Sheriff. More fundamentally,

---

[7] Under Oklahoma law, the Sheriff is the final policymaker for GCDC and contracted with Turn Key to provide medical services. Accordingly, the underlying unconstitutional conduct of Turn Key employees providing medical services pursuant to that contract can serve as the basis for the Sherriff's liability. *See, e.g., Bros. v. Bd. of Cnty. Comm'rs*, No. CIV-21-418-SLP, 2023 WL 4041854 at *9, n. 14 (W.D. Okla. June 15, 2023) (citing, inter alia, *West v. Atkins*, 487 U.S. 42, 56, (1988)).

however, the allegations of the Complaint are replete with conduct showing deliberate indifference by Defendants Baxter, Melton, Ingram, Kelley and Matthews, all of whom are GCDC employees. *See* Pl.'s Resp. [Doc. No. 38] at 13 (citing paragraphs of the Complaint that "detail the facts supporting each Individual Defendant's violations of Ms. Turley's constitutional right to adequate medical care").

The Court further rejects the Sheriff's argument, for purposes of the Rule 12(b)(6) analysis, that these Defendants were entitled to rely on the advice of Defendant Noel as the medical provider. Although "[p]rison officials generally may rely on the advice and course of treatment prescribed by medical personnel," that reliance must be reasonable. *Est. of Beauford*, 35 F.4th at 1265. The Complaint plausibly alleges facts to show such reliance was not reasonable under the circumstances as it would have been obvious to jail staff that Ms. Turley was experiencing a medical crisis and faced a substantial risk of serious harm. *See, e.g., Moralez v. Turn Key Health Clinics, LLC*, No. CIV-25-1389-R, 2026 WL 892806 at *10 (W.D. Okla. Apr. 1, 2026) (denying county sheriff's motion to dismiss on grounds that jail staff, as non-medical professionals, reasonably relied upon the advice and guidance of Turn Key staff and, therefore, could not have acted with the requisite deliberate indifference to establish an underlying constitutional violation and collecting cases requiring any such reliance to be reasonable).

The Court's analysis, therefore, focuses on whether the Complaint plausibly alleges an official policy or custom that was the moving force behind the individual Defendants' alleged deliberate indifference to Ms. Turley's serious medical needs.

**B. Municipal Policy or Custom**

**1. Defendant Turn Key**

Turn Key contends that Plaintiff fails to plausibly allege that it implemented any policy or custom that "(1) reduced the cost of providing medical and mental health care services in a manner that would maintain or increase its profit margin including no access to a physician or "high level" providers, under prescribing and under-administering medications, and keeping inmates at the jail to avoid off-site medical costs; and (2) inadequate guidance, training, and supervision to medical staff, specifically failure to train to assess and treat obvious or known symptoms of emergent and life-threatening conditions, and serious/complex needs." Turn Key's Mot. at 17 (citing Compl. ¶¶ 145-165). According to Turn Key, "[t]he Tenth Circuit ruled the exact same allegations were insufficient to survive a motion to dismiss municipal liability claims asserted against the Sheriff of Tulsa County." *Id*. at 18 (citing *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127 (10th Cir. 2023).

Turn Key further argues that to the extent Plaintiff relies on allegations of care provided to inmates at facilities other than GCDC, such care is "peripheral and inconsequential to prove the policies or customs that were present at GC[DC] in 2023." *Id*. at 21. According to Turn Key, "'one instance'" at GCDC, "'however egregious does not a pattern or practice make.'" *Id*. (quoting *Martin v. Malhoyt*, 830 F.2d 237, 255 (D.C. Cir. 1987)).

Plaintiff responds that she has alleged plausible facts showing that Turn Key "maintained a grossly inadequate medical delivery system at the [GCDC]." Resp. at 23. Plaintiff points to specific allegations of the Complaint to show these inadequacies. *Id*. at 24-25 (citing Compl. ¶¶ 53, 78-80, 107-110, 155-157, 159, 163, 325-330, 344). Plaintiff further points to "numerous calamitous medical outcomes for other inmates at facilities where Turn Key was the contracted medical provider." *Id*. at 25 (citing Compl. ¶¶ 165-332).[8]

Finally, Plaintiff contends she does not bring a claim against Turn Key based on allegations that its contract with the County to provide medical care at GCDC is unconstitutional. Rather, Plaintiff alleges that cost-saving incentives provided by the contract explain why Turn Key adopted the unconstitutional policies and practices identified in the Complaint. *See* Resp. at 26 (citing *Crawford v. Turn Key Health Clinics*, No. 24-cv-6-JDR-SH, 2025 WL 1885637 at *7 (N.D. Okla. July 8, 2025) (finding plaintiff plausibly stated a *Monell* claim against Turn Key where plaintiff alleged that Turn Key had "implemented policies, procedures, customs or practices to reduce the cost of providing medical and mental health care to increase profits" and that one such example was "allowing undertrained and under-supervised LPNs to, de facto, run the medical unit at the

[8] The Complaint identifies at least eighteen incidents, spanning a period from 2016 through 2022, of alleged inadequate medical care at various county detention facilities in Oklahoma where Turn Key was under contract to provide medical services. *See* Compl. ¶¶ 166-322. Most of the incidents involve the ultimate death of the detainee.

jail")). The Court agrees. Accordingly, Turn Key's reliance on the Tenth Circuit's holding in *Lucas* is inapposite. *See* Mot. at 18-19 (citing *Lucas*, 58 F.4th at 1145).[9]

The Court finds Plaintiff's allegations are sufficient to demonstrate plausible allegations of municipal liability against Turn Key. *See, e.g., Normali v. Seminole Cnty. Bd of Comm'rs*, No. 24-CV-257-JFH-GLJ, 2025 WL 5078119 at *6 (E.D. Okla. June 17, 2025) (finding dismissal of *Monell* claim against Turn Key not proper where complaint's allegations were sufficient to support an inference that Turn Key's policies – to include a failure to adequately train and supervise its employees and properly fund a health care system as exhibited by the lack of an on-site physician, lack of training and oversight for medical staff, and failure to adequately assess and treat life-threatening physical and mental conditions caused – caused the alleged violation of the detainee's right to adequate medical care and collecting cases were similar allegations against Turn Key survived dismissal).

Furthermore, for purposes of this stage in the proceedings, the Court disagrees with Turn Key that the conduct of its providers at other facilities is "peripheral and inconsequential." To the contrary, as alleged, if Turn Key maintained practices at GCDC consistent with those at other facilities where inmates suffered from a denial of constitutionally sufficient medical care, such practices may well demonstrate *Monell* liability. Plaintiff's claim meets the "low bar for surviving a motion to dismiss" and Plaintiff has "alleged enough to explore [her] *Monell* claim in the discovery process."

[9] In *Lucas*, the alleged unconstitutional policy was based on "cost-cutting" as evidenced by the contract between Turn Key and Tulsa County. But the Tenth Circuit found that the contract did not "reveal an improper financial incentive to keep costs low as it simply describe[d] the cost sharing agreement between the county and Turn Key." *Id.*, 58 F.4th at 1145.

*Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020); *see also Chilcoat*, 41 F.4th at 1219 ("At the motion to dismiss stage, we are tasked with assessing plausibility, not proof.").

As to Turn Key's "failure to train/supervise" claim, Turn Key argues that "Plaintiff must show that Turn Key disregarded a known or obvious consequence of failing to train in the relevant respects." Mot. at 23. Turn Key contends Plaintiff has not done so because Defendant Noel's "independent clinical judgment" does not rise to the level of deliberate indifference. *Id*. But, as previously set forth, the Court has found Plaintiff's allegations of Defendant Noel's conduct to plausibly state a claim of deliberate indifference. And the Court otherwise finds that Plaintiff's allegations are sufficient to state a plausible *Monell* claim against Turn Key for failure to train/supervise. For example, Plaintiff alleges that Defendant Noel was an undertrained and unqualified LPN, practicing without any clinical supervision, contrary to Oklahoma law. *See, e.g*, Compl., ¶¶ 161, 344. And Plaintiff further alleges that Turn Key has a pattern and practice of utilizing undertrained and unqualified LPNs. *Id*. at ¶ 166. These allegations are sufficient to withstand dismissal of Plaintiff's *Monell* claim.

**2. Defendant Sheriff in his Official Capacity**

The Sheriff moves to dismiss Plaintiff's official capacity claims against him arguing that Plaintiff fails to allege facts sufficient to show any knowledge that Turn Key would provide deficient care. Mot. at 15-22. Additionally, the Sheriff argues the Complaint is void of allegations that there were any "widespread failures at the GCDC regarding failures

to properly monitor, supervise, and care for inmates." *Id*. at 23. The Sheriff further seeks dismissal on grounds that Plaintiff fails to "establish facts available to the Sheriff that put him on actual or constructive notice that acts or omissions by his staff were substantially certain to cause a violation of rights." *Id*. at 28. Finally, the Sheriff argues that Plaintiff has failed to allege facts to show that "any cost-cutting provisions affected the care for Ms. Turley and how such provision led to her injuries." *Id*. at 30.

Notably, the Sheriff appears to concede that Turn Key's policies are, in effect, the Sheriff's policies. *See* Mot. at 30 ("As Plaintiff also alleges that Turn Key maintained unconstitutional policies at GCDC, it behooves the Sheriff, *as the final policymaker of the jail*, to address these claims." (emphasis added)).[10] As set forth above, the Court finds plausible allegations that Ms. Turley's injuries resulted from unconstitutional policies of Turn Key. Accordingly, the Court finds plausible allegations of the Sheriff's unconstitutional policies.

Moreover, accepting Plaintiff's allegations as true, the Court finds that based on the number of GCDC officers involved in the delay and denial of Ms. Turley's care, the degree of neglect to obvious medical needs of Ms. Turley and the similar incidents occurring at

[10] As the Tenth Circuit has stated: "[f]or municipal liability, courts have held entities liable for the actions of independent contractors." *Burke*, 935 F.3d at 996, n. 17 (collecting cases); *see also Swink v. Southern Health Partners, Inc*., 160 F.4th 438, 452 (4th Cir. 2025) (concluding that counties could be held liable under *Monell* for decisions of private medical care provider where counties "contracted out their authority and obligation to provide adequate medical care to inmates at their jails")*; Est. of Lovern by & through Dailey v. Correct Care Sols., LLC*, No. 18-CV-02573-KLM, 2019 WL 2903589 (D. Colo. July 3, 2019) (collecting cases finding that a county remains liable for any constitutional deprivations caused by the policies or customs of a private healthcare contractor).

other detention facilities where Turn Key contracted to provide medical services, Plaintiff has plausibly alleged a *Monell* systemic claim of liability.[11]

### C. Causation

Finally, the Court finds Plaintiff has plausibly alleged facts to show that the constitutional injuries suffered by Ms. Turley resulted from the alleged customs and policies of Turn Key and the Sheriff. It is reasonable to infer from the Complaint's allegations that the deficient medical delivery system at the GCDC resulted in the delay and denial of Ms. Turley's medical care – and ultimately, her death – in deliberate indifference to her serious medical needs. In sum, the Court finds Plaintiff has alleged plausible claims of *Monell* liability against Turn Key and the Sheriff.

## V. <u>Conclusion</u>

IT IS THEREFORE ORDERED that the Motions to Dismiss of Defendant Turn Key Health Clinic, LLC [Doc. No. 23] and Defendant Sheriff of Garvin County, in his official capacity [Doc. No. 25] are DENIED.

IT IS SO ORDERED this 28th day of September, 2026.

**SCOTT L. PALK**
**CHIEF UNITED STATES DISTRICT JUDGE**

[11] Plaintiff alleges on information and belief that the Sheriff had actual or constructive notice of these other incidents to the extent they resulted in litigation against Turn Key. *See* Compl. ¶ 343, n. 5. At the pleading stage, the Court finds these allegations further support a *Monell* claim based on a systemic theory of liability.